UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| JOHN MARCUM, et al., | ) |
| Plaintiffs, | ) Civil Action No. 6: 16-180-DCR |
| V. | ) |
| SMITHFIELD FARMLAND CORP., | ) **MEMORANDUM OPINION** |
| | ) **AND ORDER** |
| Defendant. | ) |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is pending for consideration of the defendant's Motion to Dismiss the plaintiffs' Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. [Record No. 5] The matter has been fully briefed and is ripe for decision. For the reasons that follow, the Court will grant the motion, in part, and deny it, in part.

**I.**

The plaintiffs are former employees of Defendant Smithfield Farmland Corporation ("Smithfield"), a ham packaging facility located in Middlesboro, Kentucky. [Record No. 1-1, ¶¶ 3, 6] At the time his employment ceased, John Marcum had worked at Smithfield for approximately 30 years. [*Id.* at ¶ 8] During his last few years of employment, Marcum suffered from a health condition that affected his foot and caused him to walk with a limp. [*Id.* at ¶¶ 12, 13] At some point, he was diagnosed with Charcot foot. [*Id.* at ¶ 12] Marcum was approved for intermittent leave pursuant to the Family and Medical Leave Act ("FMLA") around May 2015, due to his stomach ulcers and blood transfusions. [*Id.* at ¶ 15]

Paul Carter had been employed with Smithfield for approximately ten years. [*Id.* at ¶ 9] Around July 2012, Carter's wife was diagnosed with inflammatory joint disease and osteoarthritis, requiring Carter's care. [*Id.* at ¶ 14] Carter was approved for intermittent medical leave pursuant to the FMLA around November 4, 2014, to care for his wife. [*Id.* at ¶ 16]

The plaintiffs allege that, immediately upon returning from intermittent leave approved under the FMLA, Smithfield supervisors and management would "purposefully and knowingly retaliate against Plaintiffs by reassigning them [from their normal positions in the pump room] to the 'cardboard room,' which was known as the most rigorous and labor intensive job at the company." [*Id.* ¶¶ 7, 17] The plaintiffs allege that Smithfield supervisors and managers laughed as they observed the plaintiffs struggling with "cardboard room" duties and refused to reassign the plaintiffs to their regular jobs. [*Id.* at ¶¶ 18, 19] The plaintiffs contend that, due to Carter's age and Marcum's age and serious health condition, they were not able to perform the rigorous duties of the cardboard room and were eventually forced to resign. [*Id.* at ¶¶ 20, 24]

The plaintiffs further allege that Smithfield interfered with their ability to take leave under the FMLA by requiring them to recertify their leave after each absence. [*Id.* at ¶ 43] Additionally, the plaintiffs contend that, over the course of their employment, co-workers and members of Smithfield management subjected them to discriminatory comments based on their age and/or perceived disabilities. [*Id.* at ¶ 21]

**II.**

In considering a motion under Federal Rule of Civil Procedure 12(b)(6), the Court must look to the Complaint and determine whether it states a claim for which relief is available. The

Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations must be sufficient to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, and permit the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

While a complaint need not contain detailed factual allegations, it must contain more than an "unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action'" is insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555).

### III.

#### A. Family and Medical Leave Act ("FMLA")

Under the FMLA, a qualifying employee is entitled to 12 workweeks of leave during any 12-month period due to his own serious health condition or to care for an immediate family member suffering from a serious health condition. *See* 29 U.S.C. § 2612(a)(1). The FMLA creates a private right of action for employees based on an employer's violation of the Act. *See Id.* at § 2617. The Sixth Circuit recognizes two types of claims: one based on an employer's interference with an employee's rights under the FMLA and one based on an employer's retaliation against an employee for exercising or attempting to exercise rights under the FMLA. *See Branham v. Gannett Satellite Info. Network, Inc.*, 619 F.3d 563, 568 (6th Cir. 2010).

To prevail on an FMLA interference claim, the plaintiff must demonstrate that: (1) he was an eligible employee under the FMLA; (2) the defendant was an employer as defined by

the FMLA; (3) the plaintiff was entitled to leave under the FMLA; (4) he gave the employer notice of his intention to take leave; and (5) the employer denied the employee FMLA benefits to which he was entitled. *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507–08 (6th Cir. 2006). Under the retaliation theory, a plaintiff must establish that: (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the exercise of his rights under the FMLA and the adverse employment action. *Id.* at 507.

### 1. Eligible Employee

Only eligible employees may recover under the Act. *See Stimpson v. UPS*, 351 F. App'x 42, 45 (6th Cir. 2009). *See also Humenny v. Genex Corp.*, 390 F.3d 901, 905–06 (6th Cir. 2004) ("Eligible employee" requirement applies to both retaliation claims and interference claims under the FMLA.) An eligible employee is one who has been employed for at least twelve months and has worked at least 1,250 hours during the previous twelve-month period. 29 U.S.C. § 2611(2)(A). While the plaintiffs have pled sufficient facts to establish that they were employed by Smithfield for at least twelve months, the Complaint is devoid of information concerning the number of hours that either plaintiff worked during any twelve month period. Further, the Complaint contains no information concerning the FMLA's "worksite requirement," which provides that an eligible employee does not include an employee of worksite at which the employer employs fewer than 50 workers if the total number of employees employed by the employer within 75 miles is fewer than 50. 29 U.S.C. § 2611(B)(ii).

The plaintiffs contend that they each worked for Smithfield for many years and that they were eligible employees under the FMLA. [Record No. 1–1, ¶ 40] Whether a worker is

-4-

an "eligible employee" under the FMLA is a legal conclusion, however, and must be supported by sufficient factual matter to support the allegation. *See Iqbal*, 556 U.S. at 678. Each plaintiff contends that he applied and was approved for intermittent FMLA leave on a specific date during his employment. [Record No. 1–1, ¶¶ 15, 16] While the plaintiffs have not articulated particular facts to support each element of the "eligible employee" requirement, they allege a key factor supporting the conclusion that they were eligible employees—namely, that they applied for and were approved for leave under the Act. At this initial stage in the action, construing the facts pled in the light most favorable to the plaintiffs, the Court finds that the plaintiffs have sufficiently established that they were eligible employees under the FMLA.[1]

### 2. Interference

An employer may require an employee to provide a doctor's certification confirming the existence of a serious health condition. 29 U.S.C. § 2613(a). Additionally, an employer may require an employee to submit subsequent recertifications "on a reasonable basis." 29 U.S.C. § 2613(e). The plaintiffs contend that Smithfield interfered with, restrained, or denied their exercise of rights under the Act by requiring them to recertify their leave after each absence and "generally making it an extraordinary hassle" for them to take leave under the Act.

The Complaint provides little information regarding the nature of plaintiffs' absences under the FMLA. Specifically, the Complaint provides the date each plaintiff's leave was

---

[1] The defendant contends that allegation of eligibility is deficient because the plaintiffs have failed to plead facts regarding the timeframe in which they were entitled to FMLA benefits. With respect to the retaliation claim, the plaintiffs clearly allege that, immediately upon returning from FMLA leave, they faced retaliation from the defendant. The Complaint, read in the light most favorable to plaintiffs, indicates that the alleged interference occurred in connection to the same approved FMLA leave.

approved and that the leave was intermittent. Importantly, the length any individual absence is not stated. Further, the plaintiffs do not provide whether Marcum's (or Carter's wife's) healthcare provider specified a minimum duration of a serious health condition in the original certification.

An employer may request recertification every thirty days due to long-term conditions and may request recertification more often if circumstances have changed or the employer receives information that casts doubt on the employee's stated reason for the absence. 29 C.F.R. § 825.308(a). However, if the employee's healthcare provider has specified a minimum duration for the FMLA leave, the employer generally may not request recertification in less than the minimum period specified. 29 C.F.R. § 825.308(b). Requiring an employee to recertify leave after an absence, without more, is not a violation of the Act. Based on the facts as alleged by the plaintiffs, Smithfield's request for recertification does not constitute a violation of the FMLA.

Further, the plaintiffs' allegation of an "extraordinary hassle" fails as a matter of law. While detailed factual allegations are not required, general, unadorned accusations will not suffice. What may be an "extraordinary hassle" to one person may simply be compliance with valid FMLA requirements to another. Under *Twombly* and *Iqbal*, the plaintiffs have failed to allege sufficient facts to state a claim that is plausible on its face. *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. 678. Based on the foregoing, the plaintiffs' FMLA interference claim will be dismissed.

### 3. Retaliation

The FMLA prohibits employers from discharging or otherwise discriminating against individuals for exercising their rights under the Act. 29 U.S.C. § 2615(a)(2). Each plaintiff

contends that, immediately upon returning from approved FMLA leave, he was reassigned from his previous position in the "pump room" to the "cardboard room"—a position that was known as being the most labor intensive in the company. [Record No. 1–1, ¶¶ 7, 17–18] The plaintiffs further contend that no other Smithfield employees besides the plaintiffs were required to work in the pump room for an entire shift. The working conditions became so intolerable, the plaintiffs allege, they were forced to resign.

Smithfield argues that the plaintiffs' reassignment to the cardboard room does not constitute an adverse employment action. While reassignments without changes in salary, benefits, title, or work hours typically do not constitute adverse employment actions, the courts should examine "other indices that might be unique to a particular situation." *Ford v. Gen. Motors Corp.*, 305 F.3d 545, 553 (6th Cir. 2002) (citation omitted).

The plaintiffs have identified not only reassignment to the cardboard room, but constructive discharge as an adverse employment action at issue. *See Logan v. Denny's, Inc.*, 259 F.3d 558, 568–69 (6th Cir. 2001). To establish a claim of constructive discharge, the plaintiffs ultimately must show that Smithfield deliberately created intolerable working conditions, and that it did so with the intention of forcing the plaintiffs to quit their jobs. *See id.* To determine whether constructive discharge has occurred, both the employer's intent and the employee's objective feelings must be examined. *Id.* Whether a reasonable person would have felt compelled to resign depends on the facts of the case, but relevant factors include: demotion; reassignment to menial or degrading work; and harassment or humiliation by the employer calculated to encourage the employee's resignation. *Id.* at 569.

The plaintiffs allege that, upon reassignment to the cardboard room, Smithfield managers and supervisors laughed at the plaintiffs as they observed the plaintiffs struggling

-7-

with the intense job demands. [Record No. 1-1, ¶ 18]  The plaintiffs have also alleged a close temporal proximity between their exercise of FMLA rights and the alleged retaliatory conduct, which is enough to allege a causal link, at this stage of the proceedings.  *See Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 523–26 (6th Cir. 2008).  The plaintiffs are not required, at the pleading stage, to provide every detail of the alleged adverse action.  Construing the facts in the light most favorable to the plaintiffs, the allegations of the Complaint give rise to an inference of unlawful retaliation under the FMLA.  *See Bell v. Prefix, Inc.*, 321 F. App'x 423, 426 (6th Cir. 2009).

### B.  Kentucky Civil Rights Act ("KCRA")

#### 1.  Age Discrimination

Both plaintiffs have asserted claims for age discrimination under the Kentucky Civil Rights Act ("KCRA"), KRS § 344.040(1).  Because of its similarity to federal civil rights law, Kentucky courts follow federal law when considering claims of employment discrimination under the KCRA.  *See Bd. of Regents of N. Ky. Univ. v. Weickgenannt*, 485 S.W.3d 299, 306 (Ky. 2016).

Direct evidence of discrimination typically exists when the decision-maker or an employee who influenced the decision-maker made discriminatory comments related to the employment action in question.  *See Sharp v. Aker Plant Servs. Grp., Inc.*, 726 F.3d 789, 798 (6th Cir. 2013).  When a plaintiff seeks to establish age discrimination indirectly, courts apply the burden-shifting analysis announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Plaintiffs are required to establish a *prima facie* case with proof that the plaintiff was: (1) forty years or older; (2) discharged; (3) qualified for the position from which he was discharged; (4) and replaced by a significantly younger person.  *Williams v. Wal-Mart Stores,*

*Inc.*, 184 S.W.3d 492, 496 (Ky. 2005) (citing *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 349 (6th Cir. 1997)). While the *prima facie* elements do not constitute a pleading standard, the plaintiffs must allege specific facts necessary to show that they are entitled to relief against this legal backdrop. *See Swierkiewicz v. Sorema*, 534 U.S. 506, 512 (2002). *See also Twombly*, 550 U.S. at 570.

The Complaint does not state the plaintiffs' age. It may be inferred that Marcum is over 40-years-old since he has worked for Smithfield for more than 30 years, but the Court has no basis to infer that Carter is over the age of 40. In response to the Motion to Dismiss, the plaintiffs acknowledge this deficiency, but contend that "obviously Plaintiffs' counsel would not file an age discrimination claim if Plaintiffs were under the age of forty."[2] A motion to dismiss tests the sufficiency of the Complaint, however. While the Court applies a common sense approach to construing the parties' pleadings, it will not read into the Complaint facts that simply are not there. Because Carter has failed to allege that he is over 40-years-old, his claim for age discrimination cannot proceed.

With respect to Marcum's claim, he alleges that he was constructively discharged and that he was replaced by a person in his or her twenties. Marcum's failure to discuss whether he was qualified for his position is not fatal at this stage of litigation. The Court may infer, for the purposes of this motion, that Marcum was qualified based on his thirty years of

---

[2] The plaintiffs further contend that the defendant has "equal access and knowledge that both of the defendants are over the age of forty." The plaintiffs have also provided the affidavit of a former co-worker, purporting to provide information supporting the plaintiffs' claims. Because Rule 12(b)(6) tests the sufficiency of the Complaint, the Court will not consider matters outside the Complaint on a motion to dismiss under this rule. *See Kostrzewa v. City of Troy*, 247 F.3d 633, 643 (6th Cir. 2001).

employment. Accordingly, the motion to dismiss will be denied with respect to Marcum's claim of age discrimination under the KCRA.[3]

### 2. Disability Discrimination and Failure to Accommodate

Marcum contends that Smithfield constructively terminated his employment based on a disability or perceived disability in violation of K.R.S. § 344. Specifically, he alleges that, during the last few years of his employment at Smithfield, he walked with a noticeable limp due to a condition known as Charcot foot. [Record No. 1–1, ¶ 13]

Courts interpret the KCRA consistent with the Americans with Disabilities Act ("ADA"). *See Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 592 (Ky. 2003); *Bryson v. Regis Corp.*, 498 F.3d 561, 574 (6th Cir. 2007). These statutes make it unlawful for an employer to discriminate against an otherwise qualified individual on the basis of a disability. K.R.S. § 344.040(1)(a); 42 U.S.C. § 12112. To establish a *prima facie* case of discrimination based on disability, Marcum must show that: (1) he had a disability as the term is defined under the KCRA; (2) he was otherwise qualified to perform the requirements of his job, with or without a reasonable accommodation; (3) he suffered an adverse employment decision because of the disability; (4) Smithfield knew or had reason to know of his disability; and (5) he was replaced or his job remained open. *See Rosebrough v. Buckeye Valley High School*, 690 F.3d 427, 431 (6th Cir. 2012).

---

[3] The plaintiffs also assert that they were "subjected to discriminatory comments because of their age and/or disabilities" over the course of their employment. [Record No. 1-1, ¶ 21] Without more, this is not sufficient evidence of direct discrimination to state a plausible claim for relief. *See e.g., Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 355 (6th Cir. 1998) ("Isolated and ambiguous comments . . . are too abstract to support a finding of age discrimination.").

The KCRA defines disability as "[a] physical or mental impairment that substantially limits one . . . or more of the major life activities of the individual," having a "record of such impairment," or "[b]eing regarded as having such an impairment." K.R.S. § 344.010(4). *See also* 29 C.F.R. § 1630.2. The ADA Amendments of 2008, Pub. L. 110–325, § 2, 122 Stat. 3553 (2008), broadened the definition of disability, rejecting "inappropriately high level[s] of limitation necessary to obtain coverage under the ADA."

While Marcum's impairment may or may not constitute a disability under the KCRA, it is a fact-sensitive inquiry and dismissal at this stage of the litigation would be improper. *See e.g., Penny v. UPS*, 128 F.3d 408, 416 (6th Cir. 1997). *See also Semien v. Packaging Unlimited, LLC*, 3: 12-cv-643, 2014 WL 3508681, at *6 (W.D. Ky. July 15, 2014) ("[A]n individual may limp for a variety of reasons, many of which would not support a disability as defined in the ADA.") Further, Marcum alleges that he developed a limp and was forced to resign soon thereafter. The temporal proximity between the events may suggest that the alleged disability was a trigger for Marcum's alleged constructive termination. *Cf. Brune & Ashing v. Basf Corp.*, 234 F.3d 1267, 2000 WL 1597908, *4 (6th Cir. 2000).

Marcum also alleges that Smithfield failed to provide reasonable accommodations on the basis of his disability in violation of the KCRA. In a failure-to-accommodate case, the plaintiff must establish that he is protected by the statute, and that he "requested and was denied" a reasonable accommodation. *Lockard v. Gen. Motors Corp.*, 52 F. App'x 782, 786 (6th Cir. 2002). While the plaintiff need not use any "magic words" to request a reasonable accommodation, he must connect the request to his physical or mental restrictions. *See Leeds v. Potter*, 249 F. App'x 442, 449–50 (6th Cir. 2007). Upon an employee's request for a reasonable accommodation, "an informal, interactive process with the individual with a

disability in need of the accommodation" may occur. *See* 29 C.F.R. § 1630.2(o)(3). Marcum alleges that he requested to be assigned to his "regular job," rather than cardboard room duties, which he suggests he was unable to perform due to his disability. [Record No. 1–1, ¶ 19]

Smithfield argues that Marcum's failure-to-accommodate claim must be dismissed because his allegations do not establish that he was disabled under the KCRA. As explained above, however, Marcum has alleged sufficient facts to make his claim of disability plausible. In support, Smithfield cites a host of cases in which individuals with ambulation difficulties were determined not to be disabled under the ADA. Notably absent, however, are cases in which this determination has been made on motion pursuant to Rule 12(b)(6).

### 3. Retaliation

The plaintiffs allege that Smithfield constructively discharged them in violation of the anti-retaliation provisions of the KCRA. Kentucky Revised Statute 344.280(1) makes it unlawful to "retaliate or discriminate in any manner against a person because he has opposed a practice declared unlawful by this chapter, or because he has made a charge, filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this chapter." Because Section 344.280(1) extends only to practices and proceedings under the KCRA, it does not provide protection regarding the plaintiffs' FMLA claims. The plaintiffs have not identified any acts performed or statements made in opposition to a practice made unlawful by the KCRA. *See Walthall v. Caverna Mem. Hosp.*, 2009-CA-1320, 2010 WL 2219756, at *2 (Ky. Ct. App. June 4, 2010). Accordingly, the plaintiffs have failed to state a viable claim for retaliation under the KCRA.

### IV. Conclusion

Based on the foregoing analysis, it is hereby

-13-

**ORDERED** as follows:

1. The defendant's Motion to Dismiss [Record No. 5] is **GRANTED** in part, and **DENIED**, in part.

2. The plaintiffs' claims for interference under the Family and Medical Leave Act and for retaliation under the Kentucky Civil Rights Act are **DISMISSED**.  Plaintiff Paul Carter's age discrimination claim under the Kentucky Civil Rights Act is **DISMISSED**.  All other claims remain pending.

This 15th day of November, 2016.

Signed By:
*Danny C. Reeves* DCR
United States District Judge